**UNITED STATES of America, Appellee,**

v.

**Michael CAMPOREALE, Defendant-Appellant.**

**No. 733, Docket 74–2603.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1975.

Decided April 4, 1975.

---

Irving Anolik, New York City, for defendant-appellant.

Michael D. Abzug, Sp. Atty., U. S. Dept. of Justice (Paul J. Curran, U. S. Atty., for the Southern District of New York, John D. Gordan, III, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FRIENDLY and MANSFIELD, Circuit Judges, and BARTELS, District Judge.*

MANSFIELD, Circuit Judge:

After a jury trial in the Southern District of New York before Judge Morris E. Lasker defendant Michael Camporeale was on November 22, 1974, adjudged guilty of the charge of having committed perjury before a federal grand jury in violation of 18 U.S.C. § 1623 and sentenced to six months imprisonment to be followed by two years probation. He seeks a new trial, principally on the ground that the district court clerk, despite a stipulation of counsel to the contrary, permitted the jury during its deliberations to have unredacted minutes of his grand jury testimony, which included a reference to his prior criminal record. We reverse and remand for a new trial.

On November 17, 1972, appellant testified under a grant of immunity, 18 U.S.C. § 6001 et seq., before a federal grand jury investigating the operation of certain illegal gambling businesses, 18 U.S.C. § 1955, and more specifically his association with the gambling activities of various persons, including Louis Visconti and David Weygant. Repeatedly appellant denied any recollection of having met Visconti or Weygant. On January 18, 1973, the same grand jury filed an indictment containing three counts, two of which charged various persons (including Visconti and Weygant) with operation of an illegal gambling business, 18 U.S.C. § 1955, and conspiracy, 18 U.S.C. § 371. The third count, which named Camporeale alone, charged that in his November 17, 1972, testimony before the grand jury he committed perjury when he testified that he could not remember having seen or met Visconti and Weygant, photographs of whom had been shown to him in the grand jury room.

At trial the Government adduced evidence that appellant had met Visconti on some 12 occasions between February 10, 1972, and May 8, 1972, including eye-witness testimony of five FBI agents and several photographs of such meetings that occurred on February 22 and February 23, 1972. Several FBI agents testified to a meeting between Visconti, Weygant and appellant on May 8, 1972, which was corroborated by Weygant, who further testified that this meeting was followed by others at which he and the appellant were present.

Camporeale did not take the stand in his own defense. He sought, however, to prove that he was under the influence of methadone on the day of his allegedly perjurious grand jury testimony by calling as a witness Addi Corradi, who testified that during the period from May 24, 1971, through April 9, 1974, Camporeale

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

had been her patient at a Mt. Vernon methadone clinic. However, not having the relevant hospital records with her, she was unable to state whether he took methadone on November 17, 1972, the date of his grand jury testimony in question.

During the trial the transcript of Camporeale's three grand jury appearances, including his November 17, 1972, testimony, was received in evidence upon the stipulation of counsel for both sides, accepted by the court, to the effect that certain material would be "deemed not proper for the jury to see" and "expunged." The testimony to be excluded, an excerpt of which is printed in the margin,[1] confirmed the fact that Camporeale had been arrested four times, had stolen an automobile when he was 15 years old, and had been convicted in 1968 of possession of heroin, for which he received a six months sentence, and twice in 1970 for petty larceny for which he received $50 fines.

At the close of his instructions Judge Lasker gave the jury the customary advice that during its deliberations it might send for and consider whatever exhibits had been received. He then requested counsel to "make yourselves comfortable in the benches" while he prepared for commencement of another trial. Five minutes later, counsel for both sides having absented themselves from the courtroom, the judge, who had retired to his chambers or robing room, received a written request from the jury for "defendant's testimony before the Grand Jury which was read to us in court." Judge Lasker directed the clerk to give the marshal the requested grand jury testimony and exhibits for transmission to the trial jury, with the added instruction:

"You are going to have to get the attorneys. There was something they wanted to cut out of the Grand Jury minutes.

"When you bring them back let them assist you in getting all this stuff together."

Thereupon the court clerk, without first consulting with counsel, transmitted to the jury the transcripts of Camporeale's grand jury testimony, which had not been redacted and included the portion referring to his prior criminal record.[2] Upon learning what had happened during their absence from the courtroom the prosecutor and defense counsel, according to defense counsel's affidavit, "agreed that it would not be fruitfull [sic] to ask the Court or the clerk of the Court to remove the Grand Jury minutes from the jury room."

Within 40 minutes after its request for the grand jury minutes and within a shorter period after it received them the jury returned a verdict of guilty. Camporeale's post-trial motion to set aside the verdict on the ground that the jury had before it improper and prejudicial grand jury testimony with respect to his

---

1. "Q. Have you ever been arrested? A. Yes.
Q. How many times? A. Four—we'll say roughly—I'm not sure how many.
Q. When was the first time? A. I guess when I was a kid; I stole a car when I was 15.
Q. Were you convicted on that? A. No, youthful offender status, I think.
Q. When was the next time you were arrested? A. I am not sure. I had a few disorderly conduct charges.
I know in '68 I was convicted of possession of drugs. That is the one I can be sure of.
A six-month sentence was the outcome.
Q. What drug? A. Heroin.

In 1970 I was arrested twice for petit larceny. The outcome was $50 fine both times.
Those are the ones I'm sure of. I know there were a couple of disorderly conducts. I don't know when.
Q. Were you ever addicted on narcotics? A. Yes.
Q. Are you currently addicted? A. I am on the Methadone treatment."

2. Although the jury requested only that portion of Camporeale's grand jury testimony that had been "read to us in court" the transcript furnished to it by the court clerk not only included the material to be redacted but other testimony of the defendant that had not been read to the jury.

prior criminal record was denied by Judge Lasker on the ground that the error was waived by defense counsel's failure to move or object upon discovery that the unredacted minutes had been transmitted to the jury and on the further ground that the error was harmless.

## DISCUSSION

■ As a general proposition "defense counsel [is] as responsible as the prosecutor for seeing to it that only proper exhibits [are] sent to the jury room," United States v. Burket, 480 F.2d 568, 571 (2d Cir. 1973), and normally the failure of counsel to register a timely objection to the submission of improper evidence to the jury will be deemed a waiver, United States v. Strassman, 241 F.2d 784, 786 (2d Cir. 1957), unless it is shown that the evidence was so prejudicial that the defendant was denied a fair trial. In the present case, however, Camporeale's counsel had put the court, prosecutor, and clerk on notice that he did not intend to waive objection to the jury's consideration of the portion of the defendant's testimony regarding his prior criminal record. That portion had been delineated by the parties for redaction under an agreement that it would be improper for the jury to see it. The court accepted the agreement and instructed the court clerk accordingly. The fault in permitting the jury nevertheless to consider it lay not with the parties or the trial judge but with the court clerk who improperly furnished the unredacted transcript to the jury without obeying the judge's instruction to first arrange with counsel for deletion of the portion to be redacted.

Once the unredacted transcript had been turned over to the jury there was little likelihood of curing the error by retrieving it from the jury room. In all probability it was examined by the jury immediately after it was sent into the jury room, since it had been specifically requested by the jury and shortly after its receipt by the jury a verdict was reached. Even if counsel had objected prior to the rendition of the verdict, any interrogation of the jury by the court regarding the jury's possible consideration of the objectionable matter would only draw attention to it or lead the jury to suspect that it must contain material adverse to the defendant. Understandably both sides agreed (apparently prior to the verdict) that retrieval would be fruitless.

■■ We disagree with the view that the error can be dismissed as harmless. The principal issue before the jury was not simply whether Camporeale met with Visconti and Weygant but whether he intentionally lied in testifying that he could not remember having met them. Since resolution of that issue depended on the credibility of Camporeale's grand jury testimony, the jury's knowledge of his prior conviction and prior sentence for possession of heroin, coupled with arrests and convictions for lesser offenses, could well have led it to resolve that issue against him. We are certainly not prepared to say, as the Government suggests, that the case against Camporeale was so overwhelming that the receipt of the unredacted minutes could not have affected the outcome. While we cannot assume that the jury did or did not examine his grand jury testimony regarding his criminal record, it is sufficient that his record was a significant portion of the exhibit submitted for the jury's examination, which it might have read. There was ample time for it to do so. If, in response to appellant's motion for a new trial filed on October 22, 1974, one month after the trial, the Government desired to show that none of the jurors had examined the improperly-submitted testimony, its remedy was to ask Judge Lasker to summon the members of the jury to the courthouse for the purpose of answering whether they had seen or considered the portion that should have been stricken. See Mattox v. United States, 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892); United States v. Crosby, 294 F.2d 928, 949 (2d Cir. 1961), cert. denied sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7

L.Ed.2d 523 (1962); Radel v. Smith, 265 F.Supp. 585 (D.Conn.1967).

For these reasons the judgment must be reversed and the case remanded for a new trial. Since the case must be retried we point out, for the district court's guidance, that we fail to find any merit in appellants' other contentions. There was ample evidence to support a finding that Camporeale deliberately lied in testifying that he did not remember seeing Visconti or Weygant. Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), relied upon by appellant, is inapposite and clearly distinguishable from the present case. There the alleged perjurious testimony, while unresponsive and misleading, was technically true. Here, in contrast, there was ample evidence to support an inference that Camporeale's responsive testimony regarding his recollection was false. Cf. United States v. Sweig, 441 F.2d 114, 116–18 (2d Cir.), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

In examining Camporeale before the grand jury the prosecutor, upon the witness' testifying that he did not recall meeting Visconti and Weygant, was not under an obligation to warn him of the Government's possession (assuming the interrogator knew of it) of surveillance photographs taken by FBI agents, which depicted Camporeale in the presence of these two men. Cf. United States v. Winter, 348 F.2d 204, 208–09 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). Camporeale, having taken an oath to testify truthfully, was obligated to do so with respect to all matters testified to by him, regardless whether the Government had independent proof with respect to the subject matter. We have recently reaffirmed this principle in decisions holding that the Assistant United States Attorney is not required to advise a witness of the advantages he may gain by invoking the recantation provisions of the perjury statute, 18 U.S.C. § 1623(d). United States v. Cuevas, 510 F.2d 848, 851 (2d Cir. 1975); United States v. Del Toro, 513 F.2d 656, 666 (2d Cir. 1975). In any event the prosecutor in the present case acted fairly, advising Camporeale at the outset of his grand jury testimony that his "activities had been under surveillance for a considerable period of time."

No sound reason is advanced by Camporeale for departing in this case from the settled practice of permitting the same grand jury which heard the witness to file an indictment charging him with perjury. Having had the opportunity to observe his demeanor on the stand, it was in a superior position to determine whether there were reasonable grounds to believe that he was deliberately giving false testimony. The grand jury's knowledge of a witness' prior criminal record, furthermore, should not preclude its filing the indictment, which merely represents a charge. Lastly, the contention that § 1623 is unconstitutional because it eliminated the "two witness" rule has recently been rejected by us. See United States v. Lee, 509 F.2d 645, at 646 (2d Cir. 1975). Since the case is to be retried it is unnecessary to decide whether the district court properly excluded the testimony of the witness Corradi regarding the contents of records of the Mt. Vernon methadone clinic which were not produced in court.

The judgment is reversed and the case remanded for a new trial.