Jerry **LANGELLA,** Petitioner-Appellant,

v.

**COMMISSIONER OF CORRECTIONS, STATE OF NEW YORK,** Respondent-Appellee.

**No. 83, Docket 76–2050.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1976.

Decided Nov. 22, 1976.

Nancy Rosner, New York City, for appellant.

Henry J. Steinglass, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York County, Peter L. Zimroth, Asst. Dist. Atty., New York City, of counsel), for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Jerry Langella appeals the denial of his petition for a writ of habeas corpus by the United States District Court for the Southern District of New York, Charles L.

Brieant, Jr., Judge. Langella argues that his conviction for criminal contempt for refusing to answer the questions of a New York grand jury violates 18 U.S.C. § 2515 and the fifth amendment. We affirm.

## I.

In 1972 Langella was subpoenaed to appear before a New York County grand jury investigating the death of Joseph Gallo in April, 1972. On December 19, 1972 Justice Jawn Sandifer, Supreme Court (New York), denied Langella's motion to quash the subpoena. The motion was based on a claim that the questions to be asked by the grand jury were the product of illegal electronic surveillance. Justice Sandifer, on the prosecution's representation that a court surveillance order had been obtained, rejected Langella's request that a hearing be held.

On the same day Langella appeared before the grand jury and was given "transactional" immunity.[1] While he answered some questions, Langella refused, after consulting with his attorney, to answer other questions, and on January 16, 1973 he was indicted, pursuant to New York Penal Law § 215.51 (McKinney 1975), for criminal contempt for refusing to answer two questions.[2] In June, 1975 Justice George Roberts, Supreme Court (New York), denied Langella's motion to dismiss the indictment, and on June 18, 1975 Langella pleaded guilty. On July 24, 1975 he was sentenced to five months' imprisonment.

On March 4, 1976 the Appellate Division, First Department, affirmed his conviction without opinion, and on April 13, 1976 the New York Court of Appeals denied leave to appeal.

Langella then filed a petition for a writ of habeas corpus, which Judge Brieant denied on May 12, 1976. 413 F.Supp. 1214. On appeal Langella claims that the grand jury's questions were derived from illegal electronic surveillance in violation of 18 U.S.C. § 2515[3] and that it is a violation of the fifth amendment for the same grand jury that heard his immunized testimony later to indict him for contempt.

## II.

■ Before reaching the merits of Langella's claims, we must deal with New York's vigorous argument that this court cannot consider these claims because they were not presented to the United States District Court, because Langella by-passed the New York courts, and because he pleaded guilty. The first two arguments are without merit. Judge Brieant's opinion indicates that the issues were fully presented to the district court. Justice Roberts' opinion and the brief Langella presented to the Appellate Division indicate that the substance of these issues was also presented to the New York courts. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

1. [Y]ou are a witness in this legal proceeding and you cannot be convicted of any offense or be subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which you give evidence in this legal proceeding. You possess immunity *from any such conviction, penalty or forfeiture.* However, even though you possess such immunity you may nevertheless be convicted of perjury as a result of having given false testimony in this legal proceeding and you may be convicted of or adjudged in contempt as a result of having contumatiously [sic] refused to give evidence. I further tell you that this grand jury proceeding is a legal proceeding and to give evidence here *means to testify or to produce physical evidence.*

Statement of Immunity.

2. Langella was indicted for refusing to answer "whether he visited 101 Gedney Street in Nyack, New York during the month of April, 1972; and, whether inside the apartment LK, at 101 Gedney Street in Nyack, New York, after April 7, 1972, he also spoke with Joseph Luparelli."

3. 18 U.S.C. § 2515 provides:
   Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

On the third contention, relying on *People v. Melton,* 35 N.Y.2d 327, 329, 361 N.Y. S.2d 877, 320 N.E.2d 622 (1974), and *People v. Lynn,* 28 N.Y.2d 196, 201–03, 321 N.Y. S.2d 74, 269 N.E.2d 794 (1971), New York argues that under New York law Langella's claims are not reviewable in New York on appeal after a guilty plea and thus, under *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), Langella is foreclosed from pursuing these claims in a federal habeas corpus proceeding.

Both *Melton* and *Lynn,* however, involve appeals from a *coram nobis* proceeding in which the defendant initially failed to appeal after pleading guilty. *People v. Gleeson,* 44 A.D.2d 252, 354 N.Y.S.2d 207, 208 (1974), *rev'd on other grounds,* 36 N.Y.2d 462, 369 N.Y.S.2d 113 (1975), holds that despite a guilty plea a defendant retains his right to appeal the denial of his suppression motion, pursuant to New York Criminal Procedure Law (NYCPL, § 710.70(2) (McKinney 1971).

■ Judge Brieant held that under *Lefkowitz,* Langella's plea of guilty did not foreclose his pursuing his claims in a federal habeas corpus proceeding. See also *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam). *Lefkowitz* involved a fourth amendment claim, and *Menna* involved a fifth amendment claim. We agree with Judge Brieant that NYCPL § 710.20(2) and § 710.70(2)[4] permit Langella to challenge the legality of the electronic surveillance and that NYCPL § 210.20(1)(c) and § 210.20(1)(d)[5] (McKinney 1971), permit him to challenge the same grand jury's hearing his testimony and then indicting him.[6]

### III.

■ In *In re Persico,* 491 F.2d 1156 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158, *reh. denied,* 419 U.S. 1060, 95 S.Ct. 645, 42 L.Ed.2d 657 (1974), we held that under 18 U.S.C. § 2515 a witness before a federal grand jury is not entitled to a suppression hearing during the grand jury's proceedings unless (1) there is not a valid court order for the electronic surveillance, (2) the government concedes the surveillance is illegal, or (3) there is a prior judicial determination that the surveillance was illegal. *Id.,* 1162. Section 2515 also applies to a witness before a state grand jury. *United States v. Marion,* 535 F.2d 697, 701 (2d Cir. 1976).

Langella relies on the first exception set out in *Persico.* At the December 19, 1972

---

4. NYCPL § 710.20(2) provides:

Upon motion of a defendant who (a) is aggrieved by unlawful or improper acquisition of evidence and has reasonable cause to believe that such may be offered against him in a criminal action, or (b) claims that improper identification testimony may be offered against him in a criminal action, a court may, under circumstances prescribed in this article, order that such evidence be suppressed or excluded upon the ground that it:

. . . . .

2. Consists of a record or potential testimony reciting or describing declarations or conversations overheard or recorded by means of eavesdropping, obtained under circumstances precluding admissibility thereof in a criminal action against such defendant

. . . . .

NYCPL § 710.70(2) provides:

An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty.

5. NYCPL § 210.20(1)(c) and (1)(d) provide:

1. After arraignment upon an indictment, the superior court may, upon motion of the defendant, dismiss such indictment or any count thereof upon the ground that:

. . . . .

(c) The grand jury proceeding was defective, within the meaning of section 210.35; or

(d) The defendant has immunity with respect to the offense charged, pursuant to section 50.20 or 190.40.

6. *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), holds that a guilty plea precludes a federal habeas corpus claim that the composition of the indicting grand jury violated the fourteenth amendment. *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628 (1974), explains that in *Tollett* the tainted indictment "could have been 'cured' through a new indictment by a properly selected grand jury." Here Langella argues that there must be both a new grand jury and redaction of his truthful immunized answers.

hearing the prosecutor told Justice Sandifer that Langella's attorney "inquired of me whether or not there was electronic eavesdropping. The people told them [sic] that it was. In addition I told them that we had a Court order" (A. 22). Langella's attorney asked the court to determine whether "all the questions to be asked by the government are based only on lawful interceptions, and not on any other unlawful interceptions" (A. 25). Justice Sandifer denied this request.

In *People v. Einhorn,* 35 N.Y.2d 948, 365 N.Y.S.2d 171, 324 N.E.2d 551 (1974) (per curiam), the New York Court of Appeals set out the procedure to be followed by a grand jury witness who claims the questions being posed violate 18 U.S.C. § 2515: "The request during the Grand Jury proceeding by the witness that he be brought before the court must be respected and once there the Presiding Justice may make appropriate inquiry whether the witness' objection is sound." *Id.,* 949, 365 N.Y.S.2d 172, 324 N.E.2d 552. The New York procedure, as set out in *Einhorn,* complies with 18 U.S.C. § 2515.

When the grand jury asked Langella whether he had been receiving messages from Joseph Gorgone about the murder of Joseph Gallo, Langella, after consulting for the fourth time with his attorney, asked whether the question was based on electronic surveillance and requested that he be taken before a judge. His request was denied. Upon his continuing to be recalcitrant and to request that he be taken before a judge, he was excused by the grand jury. But the two questions for which Langella was held in contempt were asked earlier in the grand jury proceedings (A. 49, 61, 65, 69–70, 71, 75–77). Although he had already consulted three times with his attorney, Langella never told the grand jury that his refusal to answer these two questions was based on his claim that they were the product of an illegal electronic surveillance.

█ The hearing here occurred before *Einhorn,* which would today govern the pro-

cedure in the New York courts in a similar case. Justice Sandifer's denial of Langella's pre-appearance motion, on the prosecutor's assurance of the existence of a court order for the electronic surveillance, essentially meets the requirements of *Einhorn* and constitutes a sufficient accommodation of the needs of the grand jury with those of the witness. *Gelbard v. United States,* 408 U.S. 41, 70, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) (White, J., concurring). Moreover, Langella failed thereafter to make a timely request for further determination as to the source of the two questions which were the subject of the contempt indictment. The court had been informed that the surveillance was pursuant to court order and had denied the motion to quash the subpoena. Later Langella refused to answer the questions on which the indictment for contempt was based, until he could see his lawyer. After consulting his lawyer, he persisted in evading answers, but not on any claim the questions were based on illegal surveillance. Later, after being asked about one Gorgone, a/k/a Black, he asked to see a judge to determine whether that question arose from illegal surveillance. Here there was a sufficient compliance with the requirements of *Einhorn* on the earlier motion, and nothing new was raised before the grand jury to require a new hearing as to the source of the particular questions the witness refused to answer, which refusal was the basis of the contempt conviction.

## IV.

Langella claims that his indictment by the same grand jury that heard his immunized testimony violates the fifth amendment. He argues that *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), puts the burden on the government to show that the immunized testimony was not the basis of the subsequent indictment and that it is impossible to meet this burden when the grand jury which hears his truthful but highly prejudicial answers to some of its questions[7] also

---

7. Langella told the grand jury that he was a gambler, that he had not filed income tax re-

turns for a number of years, and that he was the bodyguard of Alphonse Persico.

indicts for contempt. His proposed solution is to have a different grand jury examine the transcript of his testimony, with all the truthful answers being redacted.

One problem with this proposed solution is that in deciding on a charge of criminal contempt, the second grand jury would also want to know the extent of his answers to questions. To be guilty of contempt under New York Penal Law § 215.51 a "witness need not flatly refuse to answer the questions put to him; false and evasive profession of an inability to recall, which amounts to no answer at all, is punishable as criminal contempt." *People v. Ianniello,* 36 N.Y.2d 137, 142, 365 N.Y.S.2d 821, 824, 325 N.E.2d 146, 148 (1975).

In *United States v. Camporeale,* 515 F.2d 184, 189 (2d Cir. 1975), we affirmed "the settled practice of permitting the same grand jury which heard the witness to file an indictment charging him with perjury. Having had the opportunity to observe his demeanor on the stand, it was in a superior position to determine whether there were reasonable grounds to believe that he was deliberately giving false [immunized] testimony. The grand jury's knowledge of a witness' prior criminal record, furthermore, should not preclude its filing the indictment, which merely represents a charge." We think similar considerations warrant having the same grand jury return the indictment for criminal contempt,[8] especially where, as here, the charged offense involved refusal to answer, not any crime revealed in the immunized answers.

Affirmed.

8. In *United States v. Hinton,* 543 F.2d 1002 (2d Cir. 1976), this court held that it was reversible error for the same federal grand jury which heard Hinton's immunized testimony in 1973 concerning narcotics transactions to indict her in 1975 for violating federal narcotics laws. We noted that Hinton's appeal did not involve perjury or contempt. *Id.,* 1010 n. 9.