UNITED STATES of America, Appellee,

v.

Louis MORALES, Defendant-Appellant.

No. 314, Docket 77–1359.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1977.

Decided Nov. 16, 1977.

Harold O. N. Frankel, New York City, for defendant-appellant.

Richard J. McCarthy, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for S. D. N. Y., Audrey Strauss, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

Appellant Louis Morales was convicted of criminal contempt, 18 U.S.C. § 401(3), after a jury trial before Judge Charles E. Stewart in the Southern District of New York and was sentenced to six months in prison. Specifically, Morales refused to obey court orders directing him to answer questions before a grand jury investigating possible

violations of federal gambling laws. On appeal, he argues (1) that the grand jury before which he refused to testify lacked the power to initiate a prosecution against him without having had the matter referred to it by a district judge; (2) that he was denied an adequate opportunity to contest the legality of electronic surveillance that he alleges was the source of the questions he refused to answer; (3) that his sentence for criminal contempt, imposed after he had already been committed civilly to coerce compliance with the orders to testify, constituted double jeopardy or a denial of due process; and (4) that certain supposed errors committed by his lawyer deprived him of the effective assistance of counsel. We affirm the conviction.

Morales was subpoenaed in early 1977 to testify before a grand jury investigating possible violations of federal statutes prohibiting syndicated gambling. On March 24, Judge Wyatt granted him "use immunity," 18 U.S.C. § 6002, and ordered him to "give testimony which he refused to give on the basis of his privilege against self-incrimination." Shortly thereafter, Morales appeared before the grand jury and listened to an explanation of the implications of Judge Wyatt's order, but he declined to testify, this time on the ground that the Government had engaged in allegedly unlawful electronic surveillance of him. Pursuant to the procedure we outlined in *In re Persico,* 491 F.2d 1156 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), the Government submitted to Judge Lasker for his consideration *in camera* an order by Judge Motley authorizing certain electronic surveillance and supporting affidavits. On April 22, Judge Lasker ruled that this material established the facial validity of the wiretap of which Morales complained and ordered him to testify, warning him at that time that he would be held in contempt if he continued to refuse. No appeal was taken from Judge Lasker's decision.

On April 28, Morales was again brought before the grand jury. The orders of Judges Wyatt and Lasker were called to his attention, and he stated that he understood the obligations those orders created and the availability of sanctions for contempt. Nevertheless, he continued to refuse to testify, repeatedly asserting his privilege against self-incrimination. In a civil contempt proceeding directed by Judge MacMahon later that afternoon, Morales listened to yet another explanation of his duty to answer and admitted that his refusal to do so was intentional and knowing. Judge MacMahon thereupon found Morales to be in contempt of court and ordered him committed until he agreed to testify.

The commitment resulting from Judge MacMahon's civil contempt proceeding was short-lived; Morales was released by order of Judge Knapp after only a few days. On May 3, he was indicted by that grand jury for criminal contempt.

Morales' jury trial, held on July 11 and 12, was a simple one; the Government read into the record transcripts of Morales' refusal to testify on April 28 and of his admission to Judge MacMahon that the refusal was willful and then rested. No defense witnesses were called.

*Grand Jury's Power to Indict for Criminal Contempt*

█ Morales' contention that criminal contempt may not be prosecuted by indictment unless a judge first refers the matter of the alleged act of contempt to the grand jury lacks merit. Many cases have tacitly or explicitly recognized the power of grand juries to hand down indictments charging criminal contempt. E. g., *United States v. DeSimone,* 267 F.2d 741, 743–44 (2d Cir.), *vacated as moot,* 361 U.S. 125, 80 S.Ct. 74, 4 L.Ed.2d 70 (1959) (grand jury presentment); *Steinert v. United States District Court,* 543 F.2d 69, 70–71 (9th Cir. 1976); *United States v. Mensik,* 440 F.2d 1232 (4th Cir. 1971) (per curiam); *United States v. Sternman,* 415 F.2d 1165 (6th Cir. 1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 903, 25 L.Ed.2d 88 (1970); *United States v. Eichhorst,* 544 F.2d 1383 (7th Cir. 1976); *United*

*States v. Bukowski,* 435 F.2d 1094, 1103 (7th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971).[1]

■ Reversal would not therefore be warranted unless Morales could demonstrate that his indictment prejudiced him— for example, by failing to accord him the notice or other rights provided by Rule 42, F.R.Crim.P.,[2] see *DeSimone, supra,* 267 F.2d at 743–44; *Mensik, supra,* 440 F.2d at 1234. Here no such showing has been made. Morales does not claim that the indictment deprived him of notice or any of the other rights provided by Rule 42(b). The record and the jury's verdict belie his suggestion that the prosecutor's decision to seek an indictment was vindictive or arbitrary. Nor can he complain of the fact that he was indicted by the grand jury that witnessed his refusals to testify. We have recently reaffirmed the constitutionality of this practice, *Langella v. Commissioner of Corrections,* 545 F.2d 818, 822–23 (2d Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), recognizing that a grand jury that has observed a witness' demeanor on the stand is in "a superior position" to determine whether his non-immunized testimony should subject him to criminal liability. *United States v. Camporeale,* 515 F.2d 184, 189 (2d Cir. 1975).[3] In short, absent a showing of specific prejudice, we cannot presume that the grand jury here, an institution designed for the protection of an accused against official oppression, *Ex parte Bain,* 121 U.S. 1, 11, 7 S.Ct. 781, 30

1. Morales' reliance on *In re Amalgamated Meat Cutters & Butcher Workmen,* 402 F.Supp. 725 (E.D.Wis.1975), which held that a grand jury lacks inherent power to initiate a prosecution for criminal contempt, is misplaced. In that case, a labor dispute led to charges that members of the union were violating a preliminary injunction. A district court judge referred the matter to a grand jury, which issued a subpoena covering a broad range of union documents. The custodian of the documents moved to quash the subpoena, claiming that it called for production of privileged and irrelevant material. The district court's statement that the grand jury lacked inherent power to conduct its investigation without direction from a judge was obviously much broader than necessary to dispose of the case. Notably, *Amalgamated Meat Cutters* did not reverse a conviction for criminal contempt. Finally, the case has since been criticized in *Steinert, supra,* 543 F.2d at 71 n. 1.

2. Rule 42(b) provides:
   "(b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."
   The notice requirement safeguards the accused contemnor's right to due process, in light of the fact that criminal contempt was not traditionally thought to be an "infamous crime" activating an accused's Fifth Amendment right to trial upon an indictment, e. g., *Green v. United States,* 356 U.S. 165, 183–87, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *DeSimone, supra,* 267 F.2d at 743–44. In *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), however, the Supreme Court held that a defendant accused of criminal contempt does have a right to a jury trial. There has been some debate as to whether *Bloom* implicitly gives those in Morales' position a *right* to an indictment. Compare 8B Moore, Federal Practice ¶ 42.02(1), at 42–5 to 42–7 (Rev. ed. 1977), with *Bukowski, supra,* 435 F.2d at 1099–1102. Whether or not it does, Rule 42(b) does not purport to exclude the possibility of proceeding against contemnors by indictment. It simply provides an alternative method of instituting criminal contempt proceedings, similar to that provided by statutory authorization to proceed by information rather than indictment.

3. Morales' reliance on *United States v. Hinton,* 543 F.2d 1002 (2d Cir. 1976), is misplaced. In *Hinton,* a grand jury indicted the defendant of crimes related to matters about which she had testified under a grant of immunity. Here, the grand jury heard no testimony that was immunized and therefore did not face the task of ignoring such testimony while it decided whether to issue an indictment.

L.Ed. 849 (1887); *Toth v. Quarles,* 350 U.S. 11, 16, 76 S.Ct. 1, 100 L.Ed. 8 (1955); *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), deprived Morales of any substantial rights.

■ Morales also argues that to allow a grand jury to initiate prosecutions for criminal contempt *sua sponte* would interfere with the courts' exercise of their power to secure compliance with their orders and to vindicate their authority generally. See *United States v. Leyva,* 513 F.2d 774, 778–79 (5th Cir. 1975); *In re Amalgamated Meat Cutters & Butcher Workmen,* 402 F.Supp. 725, 736 (E.D.Wis.1975). Under the circumstances of this case, we disagree. The court below retained the exclusive power, which was exercised without success before the indictment was filed, to coerce the recalcitrant witness to testify, and the indictment in no way limited Judge Stewart's authority to sentence Morales as he saw fit. Having defied the court, Morales is hardly in a position to assert its interest in vindicating its authority.

*Refusal to Furnish Grand Jury Witness With Documents Pertaining to Court-Authorized Electronic Surveillance*

The substance of Morales' wiretapping claim is that Judge Stewart erred in refusing to require disclosure of the court order authorizing electronic surveillance of him and supporting affidavits.[4] Morales concedes, as he must, that Judge Lasker's *in camera* examination of these documents and resulting determination that the Government's wiretap was facially valid were a sufficient basis for finding him in civil contempt and committing him until he might agree to testify.[5] *In re Persico, supra; In re Millow,* 529 F.2d 770, 773 (2d Cir. 1976). Nevertheless, Morales contends that he became entitled to a more comprehensive inquiry into the legality of the Government's electronic surveillance when he was charged with criminal contempt, since, he argues, the danger that a full-blown suppression hearing would delay the grand jury's investigation, admittedly an important factor in our *Persico* decision, no longer existed by that time. While Morales' interpretation of *Persico* has superficial appeal, we think that it rests on an overly narrow view of the considerations we found compelling there.[6]

In *Persico,* we resolved an apparent conflict in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, *et seq.,*[7] between § 2515 and § 2518(10)(a). Section 2515 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any proceeding in or before any . . . grand jury . . if the disclosure of that information would be in violation of this chapter."

In *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court made this section available as a defense to contempt charges based on a

---

**4.** While his argument is not entirely clear, Morales appears to contend that he would also be entitled to a plenary suppression hearing in the event that he desired to go beneath the order and affidavits.

**5.** Of course, Morales' failure to appeal Judge Lasker's order foreclosed a new challenge to the facial validity of the Government's wiretap in this criminal contempt proceeding. *Walker v. City of Birmingham,* 388 U.S. 307, 314–15, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

**6.** We have already refused to grant a writ of habeas corpus to a recalcitrant witness who claimed that his state conviction for criminal contempt was invalid because he was not given the protection afforded by the *Persico* proce-

dure. *Langella v. Commissioner of Corrections,* 545 F.2d 818, 821–22 (2d Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977). However, it appears that this is the first time we have had occasion to confront a request for a more comprehensive inquiry than that mandated by *Persico* in a criminal setting.

**7.** Morales' claim to a suppression hearing can only be based on this federal statute, since *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), makes it clear that a grand jury witness may not refuse to answer questions on the ground that they are the fruits of a Fourth Amendment violation.

refusal to answer questions derived from illegal wiretapping before a grand jury. Because of the procedural posture of that case, however, the Court could assume for the purposes of its decision that the Government's wiretap failed on its face to comply with the requirements of Title III. 408 U.S. at 46–47, 92 S.Ct. 2357.[8]

In *Persico,* by contrast, a grand jury witness persisted in his refusal to testify even after an *in camera* examination of a court order had established the facial validity of a contested wiretap. Consequently, we had to determine the extent to which Congress had intended to limit the effect of § 2515 by restricting the class of persons who could move to suppress the fruits of illegal wiretaps, see § 2518(10)(a).[9] We held that grand jury witnesses did not have the right to move for suppression hearings, either before the grand jury or in associated civil contempt proceedings, stating:

"We hold that in contempt proceedings initiated when a witness who has been

granted 'derivative use' immunity refuses to answer questions propounded by a grand jury because he claims he is entitled to a hearing to ascertain whether the questions posed are the product of unlawful electronic surveillance the witness is not entitled to a plenary suppression hearing to test the legality of that surveillance. We hold that the refusal would be permissible only if there is an absence of a necessary court order or if there is a concession from the Government that the surveillance was not in conformity with statutory requirements or if there is a *prior* judicial adjudication that the surveillance was unlawful." [10] 491 F.2d at 1162.

Morales argues that a different rule should apply in criminal contempt proceedings instituted after the grand jury's term has expired, since there is no longer any need to facilitate the smooth functioning of the grand jury's investigation by avoiding

---

**8.** In *Gelbard,* recalcitrant grand jury witnesses had been given absolutely no opportunity to determine the legality of the Government's electronic surveillance—not even an *in camera* proceeding of the sort conducted by Judge Lasker here. See 408 U.S. at 61 n. 22, 92 S.Ct. 2357.

**9.** See S.Rep. No. 1097, 90th Cong., 2d Sess., printed in 1968 Code, Cong. & Admin.News 2185 ("(Section 2515) must, of course, be read in light of section 2518(10)(a) . . . which defines the class entitled to make a motion to suppress.") Section 2518(10)(a) provides:

"(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the

motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice."

**10.** We have frequently reaffirmed *Persico,* e. g., *In re Vigorito,* 499 F.2d 1351 (2d Cir. 1974), cert. denied, 419 U.S. 1056, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); *In re Millow,* 529 F.2d 770 (2d Cir. 1976), and two other Circuits have followed our reasoning there, *In re Grand Jury Proceedings (United States v. Worobyzt),* 522 F.2d 196 (5th Cir. 1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Droback v. United States,* 509 F.2d 625 (9th Cir. 1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975); *In re Gordon,* 534 F.2d 197 (9th Cir. 1976). The First and Eighth Circuits have required production of court orders authorizing electronic surveillance in these circumstances when the Government has not made a showing of a need for secrecy. *In re Lochiatto,* 497 F.2d 803 (1st Cir. 1974); *Melickian v. United States,* 547 F.2d 416 (8th Cir. 1977), cert. denied, —— U.S. ——, 98 S.Ct. ——, 53 L.Ed.2d —— (1977).

delays attributable to suppression proceedings. We disagree. In *Persico,* we also grounded our decision heavily on the legislative history of §§ 2515 and 2518(10)(a), particularly the Senate Report, which stated:

"Paragraph (10)(a) provides that any aggrieved persons, as defined in section 2510(11), discussed above, in any trial hearing or other proceeding in or before any court department, officer, agency, regulating body or other authority of the United States, a State, or a political subdivision of a State may make a motion to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom. This provision must be read in connection with sections 2515 and 2517, discussed below, which it limits. It provides the remedy for the right created by section 2515. *Because no person is a party as such to a grand jury proceeding, the provision does not envision the making of a motion to suppress in the context of such a proceeding itself.* Normally, there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. (*[United States v.] Blue,* 384 U.S. 251, 86 S.Ct. 1416, [16 L.Ed.2d 510] (1965).) There is no intent to change this general rule. *It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding.*" (Emphasis added). S.Rep. No. 1097, 90th Cong., 2d Sess., printed in 1968 U.S.Code Cong. & Admin. News, p. 2195.

In our discussion of this report, we made it clear that a civil contempt proceeding is not a proceeding "in another context" in which a motion to suppress can be made by a recalcitrant witness, even though such a person might at first blush appear to be "an aggrieved person" to whom § 2518(10)(a) gives that right. We pointed out that the civil contempt "mechanism is so intimately connected with the grand jury proceedings in which the testimony is desired as to be really a part of those proceedings," and that the Senate envisaged only that successful motions to suppress made in "another context" would bar the use of the fruits of an illegal wiretap in future grand jury proceedings. 491 F.2d at 1162.

■ The same can be said of the criminal contempt "mechanism." First, criminal contempt prosecutions are "intimately connected" with grand jury proceedings, since the prospect of criminal sanctions could well induce a recalcitrant witness to cooperate with the grand jury during its existence, particularly if its term was about to expire at the time of the witness' initial refusal to answer.[11] During that crucial period the court should be in a position to point out to the witness that a refusal to answer would be contemptuous for both civil and criminal purposes. Thus, although the interpretation of § 2515 and § 2518(10)(a) urged by Morales would not necessarily interrupt grand jury investigations, it might well hamper a grand jury's smooth performance of its duties. Second, we think that Congress' statement that its intent was only to provide a means of barring the use of evidence in "future" grand jury proceedings disposes of Morales' claim that he is entitled to a suppression hearing to legitimate his refusal to answer in past grand jury proceedings. For these reasons we hardly think that Congress intended §§ 2515 and 2518(10)(a) to be interpreted in a fashion that would permit a single refusal to obey a court order to be treated as contempt in a civil proceeding but not in a subsequent criminal proceeding. Accordingly we conclude that Morales was entitled to no more extended procedure than that which he received—Judge Lasker's *in camera* examination of the relevant documents.[12]

*Miscellaneous Other Contentions*

■ Morales' remaining contentions may be quickly dispatched. That he was found

---

**11.** For example, in this case, Morales spent only a few days in jail pursuant to Judge MacMahon's order confining him for civil contempt.

**12.** What we have said about § 2518(10)(a) disposes of Morales' contention that § 2518(9) establishes an independent right to obtain the relevant court orders. Section 2518(9) pro-

in contempt in both a civil proceeding before Judge MacMahon and a criminal proceeding before Judge Stewart, and was confined by both judges for the same acts of contempt, gives rise to no double jeopardy or due process claim. As the Supreme Court stated in *Yates v. United States,* 355 U.S. 66, 74–75, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957):

> "The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem. *Rex Trailer Co. v. United States,* 350 U.S. 148, 150, [76 S.Ct. 219, 100 L.Ed. 149] (1956); *United States v. United Mine Workers,* 330 U.S. 258, 299, [67 S.Ct. 677, 91 L.Ed. 884] (1947) . . . Indeed, the more salutary procedure would appear to be that a court should first apply coercive remedies in an effort to persuade a party to obey its orders, and only make use of the more drastic criminal sanctions when the disobedience continues."

See *United States v. Marra,* 482 F.2d 1196, 1202 (2d Cir. 1973); *United States v. Aberbach,* 165 F.2d 713, 714 (2d Cir. 1948). The Court has since reiterated its statement in *Yates* to the effect that a judge should always determine first the feasibility of coercing testimony through the imposition of civil contempt sanctions before resorting to criminal sanctions. *Shillitani v. United States,* 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Thus, the procedure followed in this case was not only not erroneous, it was "salutary."

■ Morales' argument that he was denied the effective assistance of counsel stems from the introduction into evidence of the transcript of his admission to Judge MacMahon that his refusal to testify before the grand jury was willful. Morales' appellate counsel now contends that his trial attorney should have advised him not to make the admission in the first place and should in any event have objected to the use of the transcript at trial. Neither supposed "error" was such as to "shock the conscience of the Court and make the proceedings a farce and mockery of justice," *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), or to violate any other more stringent standard that we have considered adopting, *Rickenbacker v. Warden,* 550 F.2d 62, 65–66 (2d Cir. 1976), *petition for cert. filed,* —— U.S. ——, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). Morales' trial lawyer's apparent decision that his client's interests would best be served by a frank colloquy with Judge MacMahon, viewed in light of a massive amount of other evidence of Morales' willfulness, was certainly not unreasonable.[13] Once Morales had effectively waived his Fifth Amendment privilege before Judge MacMahon, of course, there existed no valid grounds for objecting to the admission into evidence of the transcript. See F.R.Evid. § 801(d)(2) (admissions against interest not hearsay). It was hardly evidence of incompetence for Morales' lawyer to have failed to object to admissible evidence.[14]

The conviction is affirmed.

---

vides for disclosure of these court orders only to those who are entitled to move for a full-blown suppression hearing. See S.Rep. No. 1097, 90th Cong., 2d Sess., printed in 1968 U.S.Code Cong. & Admin.News p. 2195.

**13.** The reasonableness of this decision at the time it was made is not undermined by Morales' counsel's subsequent speculation that his failure to curb his client's admission was erroneous. See Appellant's Appendix at 124A–127A.

**14.** Morales' counsel eventually filed a motion for a mistrial based on the introduction of the transcript of the proceedings before Judge MacMahon. Judge Stewart denied the motion, ruling that the objection had not been timely made, but he noted that he would have overruled a contemporaneous objection in any event. Appellant's App. at 127A.