# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1487
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| | * | |
| Duane Two Eagle, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: October 8, 2002

Filed: February 4, 2003
_____

Before MURPHY, JOHN R. GIBSON, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

A jury convicted Duane Two Eagle on three counts of assault resulting in serious bodily injury[1] and one count of using, carrying, and discharging a firearm during a crime of violence, including aiding and abetting another in the commission

_____

[1] 18 U.S.C. §§ 1153 and 113(a)(6).

of that crime[2]. Two Eagle challenges several evidentiary matters and the sufficiency of the evidence in his appeal from the District Court's[3] order. We affirm.

*Background*

The charges against Two Eagle stem from a violent conflict between feuding family groups. On the night of June 2, 2001, Two Eagle, his sister Christine "Cleo" Two Eagle, and his niece Jacqueline "Jackie" Clairmont were involved in a melee outside of Cleo's residence. That evening, Two Eagle visited Cleo's house and, upon arriving, observed a fight involving Two Eagle's nephew in a nearby field. In the field, he could see a crowd of people consisting mainly of members of the Young and Whipple families, who were residents of the same community. Soon thereafter, ten to twelve of these people followed Two Eagle's nephew to Cleo's house and began throwing items through windows and pounding on doors. Included in the crowd were Richard Young, Michael Young, Craig Two Elk, and Jerome Whipple. The crowd yelled to the people in the house to step outside to fight. The testimony indicates that every person in the crowd had a weapon such as a stick, board, or metal pipe; however, none had firearms.

As events unfolded, Two Eagle acquired a gun. Two Eagle's testimony contradicts Jackie's on exactly how he acquired it. According to Two Eagle, Jackie left Cleo's house while the crowd remained in the field and returned as the crowd began to approach the house. Two Eagle testified that Jackie obtained his gun and placed it in her car. Upon her return, Two Eagle took his rifle from Jackie's car, loaded it, and fired two warning shots into the air. Jackie, however, testified that she and Two Eagle left the house together prior to the fight to retrieve the gun, and then

---

[2] 18 U.S.C. § 924(c).

[3] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

2

returned to use it.[4] She also testified that, after the altercation, Two Eagle's nephews took the gun and hid it.

Apparently, Two Eagle's first shot caused the Young/Whipple crowd to back away. But, after the initial startle, they resumed their advance toward Cleo's house. Two Eagle testified that Richard Young came within ten to fifteen feet of him and seemed ready to hit him with a stick. In response, Two Eagle held the rifle at hip level and fired, shooting Richard in the abdomen. Two Eagle testified that he then turned and saw Michael Young, who was approaching him while swinging a metal bar. Two Eagle fired the gun three times in Michael's direction, hitting him once in the ear. Two Eagle also shot toward Whipple and Two Elk, hitting both men in the leg. Two Eagle testified that he could not flee from the scene either before or after the fight because of his physical limitations.[5]

After the altercation, Two Eagle left Cleo's for his brother's house. Two Eagle's nephews took the rifle from the scene. According to witness Vina White Lance, Two Eagle told her the next day that he shot the victims in retaliation because Richard Young beat Two Eagle's nephew. Jackie also testified that Two Eagle acknowledged that he had shot several people.

The individuals Two Eagle shot required significant medical treatment. The gunshot to Whipple's leg fractured the femur at approximately mid-thigh. He underwent surgery to have a steel rod and pins implanted to stabilize the bone, and

---

[4] Jackie, who was also charged with a crime for this altercation and for her involvement in obtaining the gun, pleaded guilty in exchange for her testimony against Two Eagle.

[5] Two Eagle suffers from various medical conditions, including bone disease related to arthritis and other chronic illnesses, and adrenal disease for which he took dialysis.

he required crutches for two months. At trial, Whipple complained of leg pain during recovery and testified that he could not run because of it. Two Elk, who was also shot in the leg, suffered a nondisplaced spiral fracture of the tibia. He required a full-leg cast. At trial, he testified that the injury was painful and still hurt when he runs. He also noted that he was in the cast for two months and required crutches for a third month. The gunshot to Michael Young's ear nearly split it in half. The wound bled considerably and required a special suturing technique. The suturing procedure was successful. However, the treating physician testified over the defense's objection that had the ear not been repaired immediately, it would have been noticeably disfigured for life. The doctor also testified over objection that such a wound would probably be "significantly painful." Michael Young confirmed that he had a scar, that he had a little more difficulty hearing out of the wounded ear, and that the ear continued to be painful in cold weather.

The government filed a nine-count indictment on June 21, 2001. Counts one through four charged Two Eagle with assault with a dangerous weapon with intent to do bodily harm against Whipple, Richard Young, Two Elk, and Michael Young. Counts five through eight charged Two Eagle with assault resulting in serious bodily injury of the same four victims. Count nine charged Two Eagle with carrying and discharging a firearm in relation to a crime of violence and aiding and abetting such conduct when he helped to procure the rifle.

Trial began on November 8, 2001. Two Eagle asserted the defense of self-defense. The jury convicted Two Eagle on three of the four counts of assault resulting in serious bodily injury. The jury also convicted him of one of the four counts of using or carrying a firearm during a crime of violence, and also of the charge of aiding and abetting such conduct. The jury acquitted Two Eagle of the charges related to Richard Young. Two Eagle was sentenced to twenty-seven-months of imprisonment on the assault charges and 120-months of imprisonment on the firearm

4

charge with three years supervised release. Two Eagle timely filed his notice of appeal on February 11, 2002.

## I.
### *Sufficiency of the Evidence*

In his first point on appeal, Two Eagle makes a two-part argument attacking the sufficiency of the evidence used to convict him. First, he argues that the evidence was insufficient to support a conclusion that he was not acting in self defense. Second, he argues that the evidence was insufficient to prove that the victims suffered serious bodily injury.

The standard of review of an appeal concerning sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly. *United States v. Crossland,* 301 F.3d 907, 913 (8th Cir. 2002)*; United States v. Burks,* 934 F.2d 148, 151 (8th Cir.1991). In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992). We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt. *United States v. Harmon,* 194 F.3d 890, 892 (8th Cir. 1999).

## A.
### *Evidence Regarding Self Defense*

Two Eagle first argues that the government's evidence was insufficient to prove that he was not acting in self defense. Two Eagle asserts that because of the attack on his nephew and because the attackers broke windows out of Cleo's home, he had a reasonable belief that the attackers would seriously injure him and his family. Two Eagle notes that several people testified about the Young/Whipple group's reputation for violence. He also notes that, although the testimony varied about whether Two

Eagle retrieved the gun himself and about how far away the victims were to Two Eagle when they were shot, it is undisputed that the mob was attacking and taunting Two Eagle's family.

Second, Two Eagle argues that an inconsistency in the jury's verdicts justifies reversal. He contends that because the jury acquitted him on the charges related to Richard Young's injuries and the charges for assault with a dangerous weapon, the jury's findings of guilt as to assault resulting in serious bodily injury are inconsistent and cannot be maintained.

The government responds that the verdicts show no inconsistency, and instead demonstrate that the jury understood the District Court's instructions. Particularly, the government urges that the verdicts show that the jury distinguished between the danger posed by Richard Young with the danger posed by the other victims. It notes that Young's proximity relative to the others could have made him a significantly greater threat. Furthermore, the government asserts that Two Eagle's acquittal on the assault with a deadly weapon charges can be viewed as consistent with the jury's determination that Two Eagle did not intend to do bodily harm to any of the victims when he fired.

The government noted that the crime of assault resulting in serious bodily injury does not require proof of specific intent as does the crime of assault with a dangerous weapon, and the court so instructed the jury. The assault charges filed against Two Eagle under 18 U.S.C. § 113 vary only as to the intent of the perpetrator.[6] 18 U.S.C. § 113(a)(3) requires specific "intent to do bodily harm."

_____

[6] As noted, Two Eagle was acquitted of the four charges of assault with a dangerous weapon. That section of the statute includes:

> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished

6

However, § 113(a)(6) requires only the generalized intent that the assault result in serious bodily injury. *United States v. Davis*, 237 F.3d 942, 944 (8th Cir. 2001) (citing *United States v. Big Crow*, 728 F.2d 974, 975 n. 1 (8th Cir. 1984)).

The jury acquitted Two Eagle on the charges of assault with a dangerous weapon which required findings that he intended to harm the victim without just cause or excuse. The jury also acquitted Two Eagle on the assault charge for shooting Richard Young, the attacker who was closest to Two Eagle and posed the greatest threat, while at the same time returning guilty verdicts for the assaults on the three other victims. The jury clearly understood the distinction in the statutes, and we hold sufficient evidence supported their verdict.

## B.
### *Evidence of Serious Bodily Injury*

In his second sufficiency point, Two Eagle argues that the government's evidence was insufficient to prove that the victims suffered serious bodily injury as defined in 18 U.S.C. § 1365(g)(3).[7] Whether an injury is serious presents a question

---

as follows:

\*\*\*

> (3) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by a fine under this title or imprisonment for not more than ten years, or both.

18 U.S.C. § 113(a)(3). Pursuant to this section of the statute, the jury was left to determine whether Two Eagle assaulted the victims with a dangerous weapon with the intent to do bodily harm and without just cause or excuse.

[7]As noted in 18 U.S.C. § 113(b)(2), the definition for "serious bodily injury" is found in 18 U.S.C. § 1365(g)(3), which provides:

> (3) the term "serious bodily injury" means bodily injury which involves

of fact for the jury. *United States v. Demery*, 980 F.2d 1187, 1189-1190 (8th Cir. 1992).

Under our precedents, the injuries the gunshots inflicted meet the standard of serious bodily injury. "Serious bodily injury" means something more than slight bodily injury, but not necessarily life threatening injury. It does not require a high probability of death. *See United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988).[8] Rather, it is a bodily injury of a grave and serious nature. *Id.* In assessing whether the injury meets the definition of "serious bodily injury," the jury is to apply their common understanding of that term. *Id.* In *Demery*, the victim's little finger was nearly severed from his hand, and he suffered permanent impairment of movement and sensation in that finger. The court determined that the injury qualified as a serious bodily injury.

In this case, Two Eagle shot Michael Young, Whipple, and Two Elk with a rifle, causing scarring at the entry and exit wounds. Each victim testified that the

_

(A) a substantial risk of death;
(B) extreme physical pain;
(C) protracted and obvious disfigurement; or
(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty;....

[8] *See also United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980). The court stated that in deciding whether there was serious bodily injury, the jury should consider "whether the victim suffered extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, protracted unconsciousness, and significant or substantial internal damage (such as broken bones)." *Id.* at 1246; *see also United States v. Cavanaugh,* 948 F.2d 405, 410 (8th Cir. 1991).

gunshot wounds produced severe pain. Furthermore, Whipple and Two Elk sustained broken legs, caused by the gunshots, and were required to undergo surgery or months of wearing casts and walking on crutches. They testified that they still have difficulty running or are unable to run. Michael Young suffered a permanent scar on his ear. He also testified that he suffered pain, significant blood loss, and some hearing loss. Young's doctor testified that such an injury would probably be seriously painful. Two Eagle presented contrary evidence attempting to show that these injuries were not serious, protracted, or painful. The jury weighed the competing testimony about the seriousness of the injuries and resolved the conflict against Two Eagle. Such determinations are proper for the jury to make. *See United States v. Drapeau*, 110 F.3d 618, 619-620 (8th Cir. 1997). This evidence is sufficient to sustain the jury's conclusion that these victims suffered "serious bodily injury" in accordance with the statutory definition.

## II.

*Expert Testimony on the Definition of Serious Bodily Injury*

In his second point, Two Eagle argues that the trial court abused its discretion by denying his motion in limine to prohibit the victims' doctors from testifying about the statutory elements of "serious bodily injury." Particularly, during trial, the government asked a treating physician whether Michael Young's ear could have been disfigured and whether that injury could cause extreme physical pain. The physician answered both questions in the affirmative. Two Eagle argues that these questions and this testimony invade the province of the jury, and that the opinion sought was not a medical opinion but a legal opinion in violation of Federal Rule of Evidence 704.[9]

---

[9] Federal Rule of Evidence 704(a) provides:

Except as provided in subsection (b), testimony in the form of an opinion or reference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial court, and the trial court's decision should not be reversed unless found to be "manifestly erroneous." *United States v. Kelly*, 679 F.2d 135, 136 (8th Cir. 1982). This court has repeatedly held that "an expert, as distinguished from a lay witness, may express his opinion on the ultimate jury question." *Hanger v. United States*, 398 F.2d 91, 106 (8th Cir. 1968); *Feguer v. United States*, 302 F.2d 214, 242 (8th Cir. 1962).

Furthermore, testimony is not defective merely because it utilized the words of the legal standard. Commonly used words and their plain meaning often match their legal meaning. *See, e.g., Johnson*, 637 F.2d at 1246-47; *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977). The term "serious bodily injury" as defined in the statute contains words that have overlapping legally and medically descriptive meanings. *See* 18 U.S.C. § 1365(g)(3).

In this case, the doctor testified that if Michael Young had not been treated immediately, then his ear would have been disfigured permanently. The doctor also stated that the wound was painful. There is no question that these two statements include language found in the definition of "serious bodily injury" and that the government's attorney specifically used these terms when asking the questions. While the federal prosecutor should not have asked the question using the specific language of the statute, *see United States v. Gipson*, 862 F.2d 714, 716 (8th Cir. 1988), the doctor's answer did not also contain that specific language. Rather, the doctor's answer to both inquiries turned on the medical aspect of disfigurement and pain, two matters he, as an expert, is trained to recognize. To exclude such testimony would be to render a medical expert's testimony generally inadmissible if the medical expert used common descriptive terms that also appear in the statute. Medical and legal terms often overlap, and a medical expert cannot be expected to use different words

merely to avoid this specific problem. As such, the District Court did not abuse its discretion in admitting this evidence under these circumstances.

## III.

### *Motion to Dismiss the Indictment*

In his third point on appeal, Two Eagle argues that the District Court erred in denying his motion to dismiss the indictment because of grand-juror misconduct. Specifically, Two Eagle argues that one of the grand jurors commented that "the Two Eagles have a little bit of short fuse." This grand juror also recounted an episode involving a "Michael Two Eagle" who had been in trouble "for shooting somebody, too." According to the grand juror, who was a teacher, Michael Two Eagle threatened her because she would not give him a colored marker in class. Two Eagle argues that although the prosecutor gave a cautionary instruction, which stated that the grand jury should not consider this information, the apparent bias of the juror and the tainting of the rest of the jury violated Two Eagle's due process rights.

Dismissal of an indictment based on grand-jury bias is an extreme remedy, and the party seeking relief carries a heavy burden. *United States v. Civella,* 648 F.2d 1167, 1173 (8th Cir. 1981). A grand-jury indictment will only be dismissed upon a showing of actual prejudice to the accused. *United States v. McKenzie,* 678 F.2d 629, 631 (5th Cir. 1982); *United States v. Carr*, 764 F.2d 496, 498 (8th Cir. 1985). The court reviews de novo a district court's order denying a motion to dismiss an indictment. *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001).

In *United States v. Brimberry,* 779 F.2d 1339 (8th Cir. 1985), we discussed the issue of prejudice in the grand-jury indictment process. In *Brimberry*, the defendant committed perjury before a grand jury. The same jury was then empaneled to consider new charges against the defendant. On appeal, Brimberry contended that he was

denied his Fifth Amendment right to be indicted by an unbiased jury. *See also Costello v. United States,* 350 U.S. 359, 363 & n. 7 (1956). He contended that the entire grand jury was biased against him because his perjury had impeded the investigation. In addition, he asserted that the grand-jury members witnessed his perjury and, as such, were unable to fulfill their function as an intermediary between the accuser and the accused. *See also Wood v. Georgia,* 370 U.S. 375, 390 (1962). In explaining our rejection of Brimberry's argument, we stated:

> "No sound reason is advanced ... for departing in this case from the settled practice of permitting the same grand jury which heard the witness to file an indictment charging him with perjury." *See also United States v. Morales,* 566 F.2d 402, 405 (2d Cir.1977) (upholding indictment for criminal contempt returned by the same grand jury before which the defendant had refused to testify). We find the same to be true here. It cannot be assumed that grand jurors will violate their oath "to indict no one because of prejudice," *United States v. Costello, supra,* 350 U.S. at 362, solely because an individual has lied to them on a matter material to the grand jury's investigation. In addition, there is no proscription against grand jurors "act[ing] on their own knowledge," *id.,* in returning an indictment.

*Brimberry*, 779 F.2d at 1351 (citing *United States v. Camporeale*, 515 F.2d 184, 189 (2d Cir. 1975)). This reasoning applies equally here because there is only an allegation of bias or prejudice without any specific showing that either exists. Furthermore, the fact that the prosecutor admonished the jurors to refrain from considering the grand juror's improper comment adequately cured any possible bias or prejudice in this case. Thus, Two Eagle did not show grand jury bias or prejudice by one panel member's statements.

## IV.

### *Proffered Defense Evidence*

In his final argument, Two Eagle asserts that the District Court abused its discretion when it excluded proffered defense evidence. Two Eagle sought to introduce evidence that prior to this shooting incident, Rondell Whipple, a known associate of the Youngs and Jerome Whipple, had broken Cleo's windows. The excluded evidence also would have shown that Richard Young also was present during the earlier incident. Two Eagle argues that the evidence would have shown that he, Cleo, and the other family members feared for their safety during the episode on June 2, 2001, and that Two Eagle acted in self defense against known aggressors he believed to be dangerous. Two Eagle argues that if the jury had heard this evidence at trial, it would have acquitted him based on his claim of self defense.

Our standard of review regarding the exclusion of evidence is whether the District Court abused its discretion and the party's substantive rights were affected. *United States v. Looking*, 156 F.3d 803, 811 (8th Cir. 1998); *United States v. Wilkinson*, 124 F.3d 971, 974 (8th Cir. 1997). A ruling on admissibility will not be reversed on appeal absent a clear and prejudicial abuse of discretion. *Id.*

Richard Young's presence during the first window-breaking incident is undisputed. However, none of the proffered evidence indicated Young's level of involvement in the prior incident. Moreover, the proffered evidence failed to establish when the incident occurred, thus undermining its relevance in this case. Given the limited proof of Richard Young's prior conduct, the District Court did not abuse its discretion when it excluded the proffered evidence.

13

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.