# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2042

_____

United States of America,          *

                               *

        Appellee,         *

                               *

    v.                 *      Appeal from the United States

                               *      District Court for the Northern

Travis Ziesman,          *      District of Iowa.

                               *

        Appellant.       *

_____

Submitted:  December 13, 2004
Filed:  June 3, 2005

_____

Before COLLOTON, LAY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Travis Ziesman appeals his conviction and sentence for manufacturing methamphetamine and for making a false statement to a federal agent. Ziesman contends that there was insufficient evidence to support the jury verdict and that the district court[1] erred in several of its rulings. In addition, Ziesman raises for the first

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

time on appeal the argument that his sentence, resulting from the application of the United States Sentencing Guidelines in a mandatory fashion and based in part on judge-found facts, is unconstitutional. For the reasons discussed below, we affirm the conviction and sentence.

## I.    BACKGROUND

In July 2002, Travis Ziesman was arrested by Iowa law enforcement authorities as a result of his participation in a methamphetamine distribution ring centered around supplier Vincent Deherrerea. Soon after Ziesman's arrest, Iowa state authorities asked for assistance from federal agencies in investigating the Deherrerea group. Ziesman signed a proffer agreement as a prelude to cooperation with federal authorities. The proffer agreement expressly provided that any information given by Ziesman could be used against him in a subsequent prosecution for acts committed by Ziesman after the date of the proffer agreement. As a result of his cooperation, the federal government made a favorable recommendation to the state prosecutor, and Ziesman received only a suspended sentence for his state drug charges.

From August 2002 through May 2003, Agent Mike Wempen of the Bureau of Alcohol, Tobacco and Firearms and Ziesman's probation officer, Joyce Lien, received occasional tips that Ziesman was using and manufacturing methamphetamine. When questioned, Ziesman alleged that former friends, angry at Ziesman for cooperating with federal agents, were starting rumors to discredit him. Ziesman also alleged that he was living with his parents and that trespassers were using his unoccupied farm to manufacture methamphetamine without his permission. Although federal agents suspected the information about Ziesman's renewed drug involvement might be accurate, they did not believe they had probable cause to arrest Ziesman.

On May 23, 2003, as part of his cooperation with federal authorities, Ziesman testified in a grand jury proceeding against Deherrerea group-member Shawn Owen.

As part of his testimony, Ziesman described his own role in the Deherrerea group and stated under oath that he had been drug-free since his arrest in July 2002.

Finally, on May 28, 2003, federal agents received a tip sufficient to establish probable cause that Ziesman was manufacturing methamphetamine and obtained a search warrant for his farmhouse. The search revealed typical methamphetamine laboratory items such as peeled batteries, starting fluid cans, empty pseudoephedrine packets, coffee filters and a blender coated with pseudoephedrine residue, and surveillance cameras. The search also revealed 2.59 grams of methamphetamine and a methamphetamine pipe.

One of Ziesman's girlfriends, Jamie Olthoff, was present at the farmhouse during the search and gave Agent Wempen information about Ziesman's methamphetamine manufacturing. On June 6, 2003, just before her grand jury testimony, Olthoff informed Agent Wempen that she was disavowing what she had told him on the day of the search. Agent Wempen and Assistant United States Attorney (AUSA) C. J. Williams confronted Olthoff about her sudden change of story, allegedly employing raised voices and profane language. Nevertheless, Olthoff testified before the grand jury that what she had told Agent Wempen on the day of the search was false. That grand jury eventually returned a first superseding indictment for one count of manufacturing methamphetamine, plus one count of making a false statement to a federal agent and one count of perjury before a grand jury based on Ziesman's testimony that he was drug-free.

Ziesman moved to dismiss the first superseding indictment, based in part on alleged governmental intimidation of Olthoff before her grand jury testimony. To avoid any appearance of impropriety, the Government presented the case anew to a different grand jury. The new grand jury, however, was the same one before which Ziesman had testified against Shawn Owen on May 23, 2003. The Government dropped the perjury charge arising from Ziesman's May 23 testimony to avoid

potential grand jury bias. This grand jury returned a second superseding indictment for one count of manufacturing methamphetamine, one count of making a false statement to a federal agent and one count of providing a location to manufacture methamphetamine.

On the eve of trial, the parties reached an agreement to drop the count for providing a location to manufacture methamphetamine. The jury returned a verdict of guilty on the two remaining counts, and Ziesman was sentenced to a 300-month prison term. On appeal, Ziesman contends that there was insufficient evidence to support the jury verdict and that the district court erred in denying Ziesman's motion to dismiss the second superseding indictment. He also alleges that the district court erred in not instructing the jury on a lesser included offense, in the admission and exclusion of certain evidence, and in denying his motion for a mistrial based on prosecutorial misconduct. In addition, Ziesman argues that the district court's application of the United States Sentencing Guidelines was erroneous and that district court should have reviewed the government's refusal to make a substantial assistance motion. Finally, Ziesman raises for the first time on appeal the argument that he was unconstitutionally sentenced using judge-found facts under a mandatory Guidelines regime.

## II. DISCUSSION

### A. Sufficiency of the Evidence

We review the sufficiency of the evidence to sustain a conviction de novo. *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003). "We will uphold a jury verdict if substantial evidence supports it." *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002). We view the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. *Fitz*, 317 F.3d at 881.

The evidence against Ziesman included the testimony of ten witnesses who variously saw him making and using methamphetamine, delivered methamphetamine laboratory supplies to him, and sold methamphetamine for him. Ziesman argues that no reasonable jury could find those ten witnesses credible because they were drug users involved in criminal enterprises who had something to gain from their testimony. However, it is well established that "[t]he issue of witness credibility 'is virtually unreviewable on appeal because it is preeminently the job of the finder of fact.'" *United States v. Beaman*, 361 F.3d 1061, 1064 (8th Cir. 2004) (quoting *United States v. Morris*, 327 F.3d 760, 761 (8th Cir. 2003)). Ziesman's argument also ignores the discovery of the methamphetamine lab at his farmhouse and corroborating evidence indicating that he occupied the farmhouse during the relevant period. We conclude that there was sufficient evidence to support the jury verdict.

## B.    Motion to Dismiss the Second Superseding Indictment

We review de novo a district court's order denying a motion to dismiss an indictment. *United States v. Two Eagle*, 318 F.3d 785, 793 (8th Cir. 2003). "A grand jury indictment will only be dismissed upon a showing of actual prejudice to the accused." *Id*. Dismissal of an indictment based on grand jury bias is an extreme remedy, and the party seeking relief carries a heavy burden. *Id*.

Ziesman argues that the grand jury which returned the second superseding indictment was biased against him because it had previously seen him testify in the Owen proceeding. In particular, the same grand jury had already heard Ziesman testify to his previous involvement in the Deherrerea group, his resulting arrest and guilty plea on state charges, and his cooperation with federal authorities. However, all of this information was also admissible against Ziesman in the new grand jury proceeding because Ziesman's proffer agreement specifically permitted the Government to use the information he provided to prosecute him for crimes committed after the date of the agreement. *See United States v. Luloff*, 15 F.3d 763,

766 (8th Cir. 1994).[2]  Because the Government was entitled to present this evidence to the grand jury in any event, Ziesman cannot establish the actual prejudice necessary for him to obtain relief.

Ziesman also contends that the grand jury was improperly biased against him as a result of his earlier false testimony before them.  If the proposed charges against Ziesman were true, then Ziesman had lied to the grand jury at the Owen proceeding when he denied any involvement with drugs since his previous arrest.  Ziesman's argument is foreclosed by *United States v. Brimberry*, 779 F.2d 1339 (8th Cir. 1985).  Brimberry perjured himself while testifying against someone else in a grand jury proceeding.  The same grand jury later returned an indictment against Brimberry for that perjury.  Like Ziesman, Brimberry contended that the grand jury was biased against him because his lie had impeded their earlier proceeding.  This Court refused to dismiss the indictment against Brimberry because "[i]t cannot be assumed that grand jurors will violate their oath 'to indict no one because of prejudice' solely because an individual has lied to them on a matter material to the grand jury's investigation."  *Id.* at 1351 (quoting *Costello v. United States*, 350 U.S. 359, 362 (1956)).  Similarly, there is no reason to assume the grand jurors in the instant case indicted Ziesman out of prejudice.  *See Two Eagle*, 318 F.3d at 794 (affirming denial of motion to dismiss indictment where "there is only an allegation of bias or prejudice without any specific showing that either exists").

---

[2]Ziesman contends that the Government should have been required to prove that all its evidence against him "was derived from legitimate independent sources," rather than from his cooperation pursuant to the proffer agreement.  *Kastigar v. United States*, 406 U.S. 441, 461-62 (1972).  However, the instant case is removed from the rule of *Kastigar* by the specific language of the proffer agreement.  *See Luloff*, 15 F.3d at 766 ("The government is not required to prove that charges are based on evidence derived from a legitimate source wholly independent of immunized testimony if the scope of the grant of informal immunity does not encompass the crimes with which the defendant is charged.").

We conclude that the district court did not err in denying Ziesman's motion to dismiss the second superseding indictment.

## C.  Lesser-Included-Offense Instruction

Ziesman contends that the district court erred in denying a lesser-included-offense jury instruction of simple possession of methamphetamine.  We review the district court's formulation of jury instructions for an abuse of discretion.  *United States v. Milk*, 281 F.3d 762, 768 (8th Cir. 2002).  "[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."  *Id.* (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)).  In the Eighth Circuit, a defendant is entitled to a lesser-included-offense instruction when:

> (1) a proper request is made;
> (2) the elements of the lesser offense are identical to part of the elements of the greater offense;
> (3) there is some evidence which would justify conviction of a lesser offense;
> (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and
> (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

*Id.* at 768-69 (quoting *United States v. Short*, 805 F.2d 335, 336 (8th Cir. 1986)).

In this case, the evidence would not permit a rational jury to find Ziesman guilty of possession of methamphetamine while simultaneously acquitting him of manufacture.  Three witnesses testified that they smoked methamphetamine with Ziesman at his farmhouse during the relevant period but were unaware from where it came.  Ziesman argues that the jury could rationally find him guilty on the lesser

charge of simple possession if it chose to believe these three witnesses, while discounting the numerous witnesses who also attested to his manufacturing operations.

Ziesman's argument ignores the extensive physical evidence of the methamphetamine lab at his farmhouse. It would be irrational for the jury to conclude that Ziesman possessed methamphetamine at his farmhouse as described by the three witnesses, yet was not responsible for the methamphetamine lab discovered on the premises. *See United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir. 1990) ("In light of the overwhelming evidence in this case that [the defendant] conducted a sophisticated marijuana manufacturing operation, a simple possession charge was not required."); *United States v. Parker*, 32 F.3d 395, 401 (8th Cir. 1994) (affirming the district court's denial of a lesser-included-offense instruction for simple possession of methamphetamine where "independent physical evidence" such as a "notebook containing entries characteristic of drug notes, documentation showing prior shipments of express mail packages and Western Union money transfers" supported the charge of possession with intent to distribute).

We conclude that the district court did not abuse its discretion in denying an instruction on a lesser included offense of simple possession.

### D. Attempt to Call the Prosecutor to Testify

The district court denied Ziesman's request to recuse the prosecutor, AUSA Williams, so he could be called to testify. "[A] trial court has wide discretion respecting examination of witnesses . . . [and] may, without abusing its discretion, refuse to allow the defense to call as a witness the United States Attorney trying the case." *Gajewski v. United States*, 321 F.2d 261, 268 (8th Cir. 1963) (citations omitted). Requests for such testimony are disfavored, and "the party seeking such testimony must demonstrate that the evidence is vital to his case, and that his inability

to present the same or similar facts from another source creates a compelling need for the testimony." *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991).

Ziesman argues that AUSA Williams must have believed Ziesman was not involved with methamphetamine as late as six days before the farmhouse search, when AUSA Williams called Ziesman to testify in the grand jury proceeding against Shawn Owen. Ziesman contends that testimony to that effect from AUSA Williams might have given some credence to Ziesman's defense that his former friends "set him up" in retaliation for his cooperation with federal authorities.

Ziesman cites *United States v. Prantil*, 764 F.2d 548 (9th Cir. 1985), in support of his argument. The *Prantil* court held that the district court should have recused the AUSA and allowed the defendant to call him as a witness where the AUSA "was a witness to, and indeed a participant in, some aspect of all of the events alleged in the indictment." *Id.* at 551. In contrast, AUSA Williams was neither a witness to, nor a participant in, any of the events purportedly supporting Ziesman's "set-up" defense. What AUSA Williams *believed* six days before the search regarding Ziesman's theory about being set up is not relevant. Because AUSA Williams had no personal knowledge of any facts relevant to Ziesman's theory, Ziesman cannot demonstrate a compelling need for AUSA Williams's testimony.

Ziesman also contends that the district court should have recused AUSA Williams due to his potential anger at Ziesman for his failure to abide by the terms of his proffer agreement. However, Ziesman cites no legal authority for his proposition that a district court should disqualify a potentially angry prosecutor. Unlike judges, "[p]rosecutors need not be entirely neutral and detached." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980).

We conclude that the district court did not abuse its discretion in denying Ziesman the opportunity to question the prosecutor.

**E.    Testimony of Ziesman's Former Attorney**

Evidence was introduced at trial regarding a conversation at which only Ziesman, Agent Wempen, and Ziesman's former attorney were present. This was the conversation during which Ziesman allegedly falsely stated to Agent Wempen that he was no longer involved with drugs, the basis for the second count of the second superseding indictment. During its cross-examination of Agent Wempen, the defense disputed Agent Wempen's recollection of that conversation. As a result, the district court allowed the Government to call Ziesman's former attorney to testify to his recollection of the conversation. We review the admission of testimony for abuse of discretion. *United States v. Parker*, 364 F.3d 934, 941 (8th Cir. 2004).

Ziesman contends that the admission of testimony from his former attorney was unfairly prejudicial and should have been excluded under Fed. R. Evid. 403. Ziesman claims the jury could have inferred that Ziesman's former attorney, who presumably knew the case well, thought he was guilty. While we agree that "[t]he mere appearance of an attorney testifying against a former client . . . is distasteful and should only be used in rare instances," *United States v. Cochran*, 546 F.2d 27, 29 n.5 (5th Cir. 1977),[3] we conclude that this case presents one of those rare instances. The former attorney's testimony was probative of the disputed key fact at the heart of the controversy–whether Ziesman did in fact utter the false statements. Furthermore, we can find nothing in the former attorney's testimony that would have signaled to the jury the attorney's belief in Ziesman's guilt. The record indicates that the district court carefully considered the issue, including the inability to obtain information about the disputed conversation from alternate sources, and found that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. "In determining whether evidence should have been excluded under Rule

---

[3]Notably, the *Cochran* court proceeded to find no error in allowing the former attorney's testimony. *Cochran*, 546 F.2d at 29.

403, a reviewing court must give great deference to the trial judge who saw and heard the evidence." *United States v. Cody*, 114 F.3d 772, 777 (8th Cir. 1997) (quoting *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980)).

We conclude that the district court did not abuse its discretion in allowing testimony from Ziesman's former attorney.

### F. Evidence of Other Crimes

Ziesman argues that the district court erred in admitting evidence under Fed. R. Evid. 404(b) of his participation in the Deherrerea methamphetamine distribution ring through July 2002, less than one year before his arrest on the current charges. We review the district court's ruling for an abuse of discretion, and "we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Brown*, 148 F.3d 1003, 1009 (8th Cir. 1998).

"Evidence [of past crimes] is admissible under Rule 404(b) if '(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential for unfair prejudice does not substantially outweigh its probative value.'" *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (quoting *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000)). It is well-established that evidence of past drug involvement can be relevant to establish knowledge and intent for newly charged drug offenses. *See, e.g., United States v. Hill*, 249 F.3d 707 (8th Cir. 2001) (finding evidence of prior drug involvement relevant to show intent where defendant claimed that he was unaware of the presence of drugs in the apartment where he had been staying); *Frazier*, 280 F.3d at 847 (finding evidence of prior drug involvement relevant to show knowledge and intent where defendant claimed that he did not

knowingly join the conspiracy to distribute drugs but was only present because those involved were his longtime friends).

In this case, Ziesman claimed that he was unaware of the presence of a methamphetamine lab at his farmhouse. This rendered his past methamphetamine involvement relevant to show his knowledge of, and intent to profit from, the methamphetamine trade. Furthermore, his past drug involvement was of a similar nature and was continuing within a year of his arrest on the current charges. *See Frazier*, 280 F.3d at 847 (holding evidence of similar drug-related crimes five years in the past was "well within the bounds of admission"). Ziesman's participation in the Deherrerea group was demonstrated by ample evidence. Finally, Ziesman made no showing that the evidence of his involvement in the Deherrerea group would tend to inflame the jury's emotions or otherwise suggest to the jury that it should convict Ziesman on an improper basis. *See United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002) ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis.") (quoting Fed. R. Evid. 403 advisory committee note). Therefore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

We conclude that the district court did not abuse its discretion in admitting evidence of Ziesman's involvement in the Deherrerea group in order to show his knowledge and intent with respect to the manufacture of methamphetamine at his farmhouse.

## G.  Admission of Modified Laboratory Reports

The Government introduced three laboratory reports that had been modified without prior notice to the defense. The caption on the original reports listed Vincent Deherrerea as a suspect, along with Ziesman. On direct examination by the Government, crime lab analyst Patricia Krahn identified exhibits 15-A, 15-B, and 15-

C as reports generated by her lab. However, these exhibits were different versions of the original reports, in that Deherrerea's name had been removed from the captions. Ziesman contends that the documents were inadmissible under Fed. R. Evid. 901(a) because they were not properly authenticated, and also under Fed. R. Evid. 1002 and 1003 because they were not originals or exact duplicates of originals. The district court's decision to admit evidence is reviewed for abuse of discretion. *United States v. Le*, 272 F.3d 530, 532 (8th Cir. 2001) (per curiam).

The defense cross-examined Krahn extensively about the change in the captions. Krahn explained that the crime lab associated Deherrerea's name with the lab tests in its computer system by mistake. After she was informed of the mistake, Krahn discovered that it was not possible to alter the crime lab computer database records to regenerate the crime lab reports with the correct captions. Therefore, Krahn recommended that the prosecution correct the captions in "some other fashion," leading to the redacted reports. Most importantly, Krahn testified that the information in the redacted reports was a correct presentation of the crime lab's results. This testimony was sufficient to authenticate the redacted reports. Even if the admission of the redacted reports were erroneous, the defense's extensive cross-examination regarding the change to the captions served to render any error harmless. *Cf. United States v. Beckman*, 222 F.3d 512, 523-24 (8th Cir. 2000) ("In light of the fact that the evidence would eventually have been admissible and the lack of a showing that the arguably premature admission carried any prejudice, we find any error harmless.") (footnote omitted).

The reports were not required to be originals. "Rule 1002 simply expresses the law's preference for using the original of a document to prove the contents of that document." *Brooks v. Ameren UE*, 345 F.3d 986, 989 n.3 (8th Cir. 2003). In this case, the reports were generated and introduced to show the results of tests performed by the crime lab; the report documents themselves had no independent evidentiary significance.

We conclude that the district court did not abuse its discretion in admitting the redacted reports into evidence.

## H.   Prosecutorial Misconduct

Ziesman contends that there were three instances of prosecutorial misconduct sufficient to warrant a mistrial. We review for an abuse of discretion the district court's denial of a motion for mistrial based on prosecutorial misconduct. *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000). We will reverse a conviction for prosecutorial misconduct only if "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him a fair trial." *Beckman*, 222 F.3d at 526. If we reach the second step, we consider "(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court." *Id.*

First, Ziesman argues that the prosecutor mischaracterized the earlier testimony of probation officer Joyce Lien during the cross-examination of Ziesman's drug-treatment counselor, Wendy Valentine. Lien had taken notes during a June 2003 conversation with Ziesman and Valentine. The notes recorded that Ziesman had used methamphetamine on two recent occasions, but the notes were ambiguous as to whether Ziesman himself had stated this to Lien or, alternatively, Valentine had stated it and Ziesman had agreed with her statement. In her trial testimony, Lien clarified that Ziesman affirmatively stated that he had used methamphetamine, but it was Valentine who stated when. Lien testified that Ziesman had then affirmatively agreed with Valentine's statement about the timing of his methamphetamine use.

The prosecutor did not improperly mischaracterize the record during his cross-examination of Valentine. The prosecutor's statement to Valentine that "Ms. Lien has in her notes that the Defendant said in that meeting that he used meth on two

occasions recently" was consistent with the contents of Lien's notes. In addition, the prosecutor's characterization that Ziesman "said" to Lien that he had used meth recently on two occasions was not materially inconsistent with Lien's testimony that, during her meeting with Ziesman and Valentine, Ziesman agreed with Valentine's statement regarding the timing of his recent use of methamphetamine.

Second, Ziesman argues that the Government's closing argument improperly implied that the burden of proof was on Ziesman. While "[p]rosecutorial misconduct during closing argument may be grounds for reversal of a conviction," *Beckman*, 222 F.3d at 526, "[t]rial courts have broad discretion in controlling closing arguments." *Id.*

In its own closing argument, defense counsel invited the Government's response with its repeated references to the Government's failure to call certain witnesses, intimating that these witnesses were not called because they would have damaged the Government's case. In response to these statements, the Government said in its closing, "the Defendant did not have an obligation to bring anybody in court, but the defense has subpoena power, and you saw him exercise it to bring people into your court just like the Government does."

We have held that the Government is permitted to refer to a defendant's subpoena power in its closing argument when the defendant has emphasized the Government's failure to call potentially damaging witnesses. *See, e.g. United States v. Flynn*, 196 F.3d 927, 931 (8th Cir. 1999); *United States v. Kragness*, 830 F.2d 842, 872 (8th Cir. 1987). The instant case falls squarely under this rule. The district court did not abuse its discretion in denying Ziesman's motion for a mistrial based on the Government's responsive reference to the defense's subpoena power.

Third, Ziesman argues that the Government's reference in closing arguments to Ziesman's failure to produce promised evidence of witness intimidation was

improper. Prior to trial, the district court barred the defense from introducing the alleged intimidation of Olthoff before her grand jury testimony unless it became relevant; that is, unless it became clear that Olthoff's trial testimony contradicted her grand jury testimony. Despite this ruling, the defense's opening statement promised evidence that law enforcement officials intimidated Olthoff. The Government objected, but chose not to ask for a mistrial or a curative instruction. The defense never called Olthoff to the stand.

In its closing argument, the Government listed several points that the defense had promised, but failed, to address, including defense counsel's opening-statement reference to law enforcement officials intimidating a witness. Ziesman contends that it was improper for the Government to refer to the barred subject matter. However, as the district court noted, its order only barred the defense from introducing the subject matter. The order did not bar the Government from responding on the issue after it was raised by the defense. "In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." *Flynn*, 196 F.3d at 930. In its opening statement, the defense attacked the Government's case by suggesting the Government intimidated witnesses. Therefore, the Government was entitled to respond in its closing argument by pointing out the lack of evidence to support that contention.

Because we find no prosecutorial misconduct, we need not address whether that conduct prejudicially affected Ziesman's substantial rights so as to deprive him a fair trial. We conclude that the district court did not abuse its discretion in denying Ziesman's motion for a mistrial based on prosecutorial misconduct.

## I. Sentencing Issues

Ziesman contends that his sentence, pronounced under mandatory Sentencing Guidelines and based in part on facts found by the district court, is erroneous under

*United States v. Booker*, 543 U.S. ---, 125 S. Ct. 738 (2005). Before the district court, Ziesman did not argue *Apprendi* or *Blakely* error or that the Guidelines were unconstitutional. Therefore, we review his sentence for plain error. *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc).

Before we review the sentence for plain error, however, we must consider Ziesman's argument that the district court misapplied the then-mandatory Guidelines. These issues are "still important because the statute as excised by *Booker* 'requires judges to take account of the Guidelines together with other sentencing goals.'" *Pirani*, 406 F.3d at 549 (quoting *Booker*, 125 S. Ct. at 764).

We continue to review de novo the interpretation and application of the Guidelines provisions after *Booker*. *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005).

### 1. Drug Quantity Findings

In determining drug quantity, the district court may consider all drugs that were a part of the same course of conduct, common scheme or plan as the conspiracy. *United States v. Jimenez-Villasenor*, 270 F.3d 554, 561 (8th Cir. 2001). The Government must prove drug quantity by a preponderance of the evidence. *Id.*

The district court used the testimony of two cooperating Government witnesses to establish that Ziesman used 2,250 grams of pseudoephedrine to manufacture methamphetamine. Ziesman contends that those cooperating witnesses were inherently unreliable because methamphetamine use had affected their memories, they were given use-immunity for their testimony, and they had grudges against Ziesman.

We cannot say that the district court's finding that the cooperating witnesses were credible was clearly erroneous. Witness credibility is an issue for the sentencing

judge that is virtually unreviewable on appeal. *United States v. Jones*, 160 F.3d 473, 480 (8th Cir. 1998). Furthermore, we have repeatedly held that testimony from co-conspirators and cooperating witnesses is sufficiently reliable to establish drug quantity for sentencing purposes. *See, e.g., United States v. Sarabia-Martinez*, 276 F.3d 447, 451 (8th Cir. 2002); *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001); *United States v. Santana*, 150 F.3d 860, 864 (8th Cir. 1998). There is nothing in the record to suggest that we should disturb the district court's finding that these two cooperating witnesses were credible. Therefore, the district court's drug-quantity finding, based on the testimony of these witnesses, was not clearly erroneous.

## 2. Aggravating Role Enhancement

The district court found for sentencing purposes that Ziesman was a manager or supervisor of the criminal activity, triggering a three-level enhancement under U.S. Sentencing Guidelines Manual § 3B1.1(b) (2003). To trigger the enhancement, Ziesman must have managed or supervised at least one other participant on at least one occasion in a criminal activity that, overall, involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(b); *see United States v. Zimmer*, 299 F.3d 710, 723-24 (8th Cir. 2002).

In making the necessary findings, the district court relied on the testimony of three witnesses who delivered methamphetamine precursors and lab equipment to Ziesman in exchange for methamphetamine, plus another witness to whom Ziesman supplied methamphetamine in exchange for help with the cooking process. Again, we cannot say that the district court's finding that these witnesses were credible was clearly erroneous. This evidence was sufficient to establish at least five participants and to establish Ziesman's management of those participants. *See United States v. Jasper*, 169 F.3d 1109, 1110 (8th Cir. 1999) (per curiam) (affirming application of the manager-or-supervisor enhancement where a participant "controlled others by

-18-

giving them drugs for bringing him customers, by 'fronting' them drugs, and by teaching another drug dealer the technique of cooking cocaine into crack").

The district court did not err in applying the § 3B1.1 three-level manager-or-supervisor enhancement.

### 3. Obstruction of Justice Enhancement

The district court imposed a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, finding that Ziesman testified falsely during the trial and during two pretrial hearings before a magistrate judge. A district court applying the obstruction-of-justice enhancement for perjury must review the evidence and make an independent finding, by a preponderance of the evidence, that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Taylor*, 207 F.3d 452, 454-55 (8th Cir. 2000) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

Ziesman, citing *United States v. Aguilar-Portillo*, 334 F.3d 744, 748-49 (8th Cir. 2003), argues that an obstruction-of-justice enhancement is inappropriate for a defendant who simply maintains his innocence throughout the trial, yet is found guilty by the jury. In this case, however, the district court specifically found that Ziesman willfully testified falsely when he stated he was not involved in manufacturing or distributing methamphetamine after July 2002, that he did not use drugs after July 2002 and that he did not know how to manufacture methamphetamine. These statements by Ziesman went beyond a mere proclamation of innocence. Furthermore, as we stated in *Aguilar-Portillo*, while "the enhancement may not be based solely upon the defendant's failure to convince the jury of his innocence," it "may be based on the experienced trial judge's express finding, based

-19-

on the judge's personal observations, that the defendant lied to the jury." *Id.* at 749 (quotation omitted).

The district court did not err in imposing a two-level enhancement for obstruction of justice under § 3C1.1.

### 4. Substantial Assistance Motion

At sentencing, Ziesman challenged the Government's refusal to make a substantial assistance motion under U.S.S.G. § 5K1.1, which would have permitted the district court to depart downward from the Guidelines sentencing range in consideration of Ziesman's prior cooperation with the Government.

"The government has no duty to make a substantial assistance motion unless it has entered into a plea agreement with the defendant that creates such a duty." *United States v. Mullins*, 399 F.3d 888, 889-90 (8th Cir. 2005) (quoting *United States v. Wolf*, 270 F.3d 1188, 1190 (8th Cir. 2001)). No such duty was created in this case. In the absence of such a duty, a district court may review the Government's refusal to make a substantial assistance motion only if the Government's decision was based on an unconstitutional motive or was not rationally related to a legitimate government interest. *Mullins*, 399 F.3d at 890. The defendant must make a "substantial threshold showing" of one of these improper motives in order to justify a review. *Id.*

After a careful review of the record, we find Ziesman has failed to make a threshold showing of an improper motive behind the Government's refusal to make a substantial assistance motion. Although the Government acknowledged Ziesman's assistance prior to his June 2003 arrest, the Government stated that his renewed drug involvement effectively eliminated his usefulness as a cooperating witness and jeopardized the indictments which had been obtained with the aid of his testimony.

For these reasons, the Government rationally decided that Ziesman's assistance was not "substantial."

Ziesman contends that under *United States v. Anzalone*, 148 F.3d 940 (8th Cir. 1998), *reinstated by* 161 F.3d 1125 (8th Cir. 1998), the Government could not refuse to file a substantial assistance motion based on a factor other than the assistance he provided. In *Anzalone*, the Government conceded that its decision not to file the motion was based entirely on a factor unrelated to the defendant's substantial assistance. In the instant case, the situation is quite the opposite. The Government made it clear that its decision was based on the fact that Ziesman's renewed drug involvement thwarted his ability to provide substantial assistance. We have distinguished *Anzalone* from cases like this one. *See United States v. Moeller*, 383 F.3d 710, 712 (8th Cir. 2004) ("Our subsequent cases have made it clear, however, that relief in *Anzalone* was predicated on government concessions that established a statutory duty to file the substantial assistance motion.").

The district court did not err in declining to review the Government's refusal to make a § 5K1.1 substantial assistance motion, because Ziesman failed to make a substantial threshold showing of an improper motive.

### 5. Plain Error Analysis

Having determined that the Guidelines were applied correctly, we turn to the issue of *Booker* error. To determine whether Ziesman's sentence is erroneous under *Booker*, we apply the plain-error test as set forth in *United States v. Olano*, 507 U.S. 725, 732-36 (1993). The test has been stated as follows:

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously

affects the fairness, integrity, or public reputation of judicial proceedings.

*Pirani*, 406 F.3d at 550 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

As in *Pirani*, the first two factors are satisfied because the district court committed error in applying the Guidelines in a mandatory fashion based on judge-found facts, and the error is plain at the time of appellate consideration. *See Pirani*, 406 F.3d at 550. To satisfy the third *Olano* factor, Ziesman must demonstrate "a reasonable probability that he would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory." *Id.* at 551.

Ziesman's base offense level of 36 under U.S.S.G. § 2D1.1 was based on the 2.5 pounds of methamphetamine mixture admitted to by Ziesman, plus the additional 2,250 grams of pseudoephedrine that the district court found attributable to Ziesman. The three-level manger-or-supervisor enhancement and the two-level obstruction-of-justice enhancement resulted in a total offense level of 41. Ziesman's criminal history category was I, leading to a Guidelines sentencing range of 324-405 months. However, the combined statutory maximum prison term available under the two counts of conviction was 300 months.[4] Accordingly, the district court sentenced Ziesman to a 300-month term of imprisonment.

After carefully reviewing the record on appeal, we conclude that Ziesman cannot meet his burden of demonstrating a reasonable probability that the district

---

[4]The statutory maximum term of imprisonment for manufacture of methamphetamine is 240 months. 21 U.S.C. § 841(b)(1)(C). The maximum for making a false statement to a federal agent is 60 months. 18 U.S.C. § 1001. Applying U.S.S.G. § 5G1.2(d), the district court imposed the maximum term on each count to run consecutively.

court would have imposed a more favorable sentence under advisory Guidelines. Due to the statutory maximums, Ziesman's sentence was already 24 months less than the minimum of the applicable Guidelines range. The district court gave no indication that, given broader discretion, it would have pronounced an even shorter sentence. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." *Pirani*,406 F.3d at 553 (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005)).

We conclude that Ziesman cannot satisfy his burden under the third *Olano* factor. We need not reach the fourth factor. Ziesman's sentence was not plain error under *Booker*.

## III.   CONCLUSION

We conclude that there was sufficient evidence to support the jury's verdict and that the district court did not err in denying Ziesman's motion to dismiss the second superseding indictment. We also conclude that the district court did not err in not instructing the jury on a lesser included offense, in the admission and exclusion of certain evidence or in denying a motion for a mistrial based on prosecutorial misconduct. The district court applied the Guidelines properly, and Ziesman cannot show plain error resulting from the application of the Guidelines in a mandatory, rather than advisory, fashion. Therefore, we affirm.

_____