# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-1878

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

YORK WILSON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:11-cr-30104-001-GPM—**G. Patrick Murphy**, *Judge*.

ARGUED SEPTEMBER 21, 2012—DECIDED OCTOBER 19, 2012

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, an inmate of the Federal Correctional Institution at Greenville in southern Illinois, was convicted by a jury of "assault resulting in serious bodily injury" on another inmate, in violation of 18 U.S.C. § 113(a)(6), and was sentenced to 46 months in prison. He argues that he did not inflict a "serious" bodily injury on his victim, and he also complains about the judge's refusal to give an instruction to the jury on self-defense.

The term "serious bodily injury" is defined in 18 U.S.C. § 1365(h)(3) as "bodily injury which involves" "a substantial risk of death," "extreme physical pain," "protracted and obvious disfigurement," or "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." The definition was added in 1983 to a statute that punishes "tampering with consumer products" and at first had no application to the assault statute. But in 1994 section 113 was amended to incorporate the definition of "serious bodily" injury in section 1365(h)(3); see § 113(b)(2). Until then, the assault statute had left "serious bodily injury" undefined.

The jury could have found the following facts. The defendant is a black Muslim. A cellmate and close friend, also a Muslim, was attacked by Mexican inmates. The prison has many Muslim and Mexican inmates, and the prison authorities, fearing that the attack might precipitate a riot, ordered that all the inmates be locked in their cells. The defendant's cellmates included a Mexican named Efrain Rodriguez. Suddenly, without any provocation, the defendant, a much larger man, attacked Rodriguez—punched him, kicked him in the head with his steel-toe boots, stomped on him when Rodriguez fell to the floor, and slammed Rodriguez's head into a bunk. Rodriguez made no effort to defend himself, which apparently would have been futile given the defendant's size and ferocity. None of the other five cellmates intervened; they were afraid of the defendant. Rodriguez had not participated in the Mexicans' assault on the defendant's Muslim cellmate,

but the defendant considered him, as a Mexican, an appropriate target of revenge for the assault. (That is what is called "collective punishment.")

When rescued by guards, Rodriguez was conscious but dazed. He may have been unconscious during part of the assault—he probably had suffered a concussion, which might or might not cause a complete loss of consciousness. He was bloody, had difficulty walking, there were two large lacerations on his forehead that required 16 stitches to close, there was bruising behind his ear, and he had scratches, abrasions, and contusions. His nose was broken and his eyes swollen shut and he complained of headache and of pain in his face and shoulders. Two weeks later he was still having headaches, he had several loose teeth, and his bruises and lacerations had not healed completely. He was having difficulty sleeping and difficulty thinking and exhibited signs of post-traumatic stress syndrome, for which Zoloft was prescribed. These symptoms had not disappeared by the time of the defendant's trial six months later, nor the scars on the victim's face from the lacerations.

Wilson might have killed Rodriguez with his steel-toe boots. We were told at oral argument that the prison requires the inmates to wear these boots (unless they have a special permit), even when the inmates are in their cells, despite the acute racial, ethnic, and religious tensions among the inmate population. The defendant's cell contained a mixture of Muslims and Mexicans. The prison manufactures army combat uniforms, and the boots are used in unexplained ways in that manu-

facture, but why the inmates are permitted, let alone required, to wear them outside the manufacturing facility baffles us.

Picking through the definition of "serious bodily injury," the defendant denies that his assault on Rodriguez created "a *substantial* risk of death," inflicted "*extreme* physical pain," caused "protracted and obvious *disfigurement*," or caused a "*protracted* loss or impairment of the *function* of a bodily member, organ, or mental faculty." He thus denies that the statute permits a holistic or aggregative assessment of the gravity of the injury in a case such as this in which the assault creates a risk of death, inflicts considerable physical pain, causes visible scarring, and may have inflicted significant psychological injury.

The statute thus illustrates the limits of definition as a legal tool. Left undefined, the term "serious bodily injury" is intuitive—a concept jurors can understand and apply. Congress's attempt at definition added useless, confusing complexity.

It is an occupational hazard of lawyers to seek clarity by adding words. Refusing to elaborate to a jury the meaning of "reasonable doubt" is a rare example of a wise acknowledgment of the limitations of definition. Congressional drafters would have been wise to exercise similar verbal self-restraint with regard to "serious bodily injury." It's true that before Congress defined it many judges were not content to leave well enough alone, but elaborated the term in their jury instructions, influenced by the fact that state assault statutes tended to elaborate it, in the spirit as it were

of section 1365(h)(3). Thus in *United States v. Johnson*, 637 F.2d 1224, 1246 (9th Cir. 1980), we read that "a jury should be instructed to use its common sense in deciding whether the injuries constitute serious bodily injury. Among the factors the jury should consider are whether the victim suffered extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, protracted unconsciousness, and significant or substantial internal damage (such as important broken bones)."

Before the definition was added to the statute we had explained that "there is no mystery to the words 'serious bodily injury,'" and had approved instructing the jury that to find a "serious bodily injury" it would have to find that the victim's injury was "more than slight and of a grave and serious nature." *United States v. Webster*, 620 F.2d 640, 642 (7th Cir. 1980). That is all the instruction a jury needs.

We reject the argument that no reasonable jury could have found that the defendant's assault on Rodriguez inflicted serious bodily injury as defined in section 1365(h)(3). Indeed a jury could find all four subdefinitions satisfied. One cellmate testified that he told the defendant during the fight to stop lest he kill Rodriguez and that in reply the defendant had said that that was what he was trying to do. The medical personnel were sufficiently alarmed by Rodriguez's symptoms to take precautions against the possibility that he had trauma to his head, bleeding inside his skull, and a broken

neck. The beating, and the stomping with steel-toe boots, could well be found to have inflicted extreme pain until Rodriguez lost consciousness (if he did); facial scars present after six months could be found to be "protracted and obvious disfigurement"; and the impairment of his "mental faculty" also had not dissipated over that period. Cf. *United States v. Peneaux*, 432 F.3d 882, 890-91 (8th Cir. 2005); *United States v. Two Eagle*, 318 F.3d 785, 791-92 (8th Cir. 2003).

Our conclusion is reinforced by a consideration of other sections of the assault statute. The maximum sentence for an assault that results in serious bodily injury is 10 years in prison, while both "assault by striking, beating, or wounding" and "simple assault" are punishable by a maximum of only 6 months in prison. 18 U.S.C. §§ 113(a)(4), (5). The ratio of maximum sentences for assaults that do cause serious bodily injury to maximum sentences for assaults that do not is thus 20 to 1, which means that the defendant is arguing that his maximum sentence should have been six months. That would be a ridiculously light punishment for an assault of such gravity. As we said in *United States v. Webster*, *supra*, 620 F.2d at 641, "we see no indication that Congress intended to leave such an obvious structural gap providing only a nominal penalty for vicious assaults." Congress could not have intended by adding the definition of serious bodily injury to cap the punishment for assaults of the gravity of the assault in this case at six months' imprisonment.

As for the judge's refusal to give a self-defense instruction, there was no basis for a defense of self-defense.

The defendant testified that he had seen Rodriguez with a knife the day before the assault but not on the day of the assault. There was no evidence that Rodriguez had a knife when the defendant attacked him or that he threatened the defendant. The defendant could not have had a reasonable belief that he was in imminent danger from Rodriguez, and without such a belief there can be no defense of self-defense. E.g., *United States v. Haynes*, 143 F.3d 1089 (7th Cir. 1998). The only "provocation" for the attack was Rodriguez's nationality. Far from being a basis for a defense of self-defense, the defendant's motive compounded the wrongfulness of his action. He should be grateful that he didn't receive a longer sentence.

AFFIRMED.